UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-3828 (JFB) (WDW)
_____

THOMAS J. BUTLER,

Plaintiff,

VERSUS

JOHN E. POTTER, POSTMASTER GENERAL, U.S. POSTAL SERVICE,

Defendant.

_____

MEMORANDUM AND ORDER
March 26, 2009
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Thomas J. Butler (hereinafter, "plaintiff" or "Butler") brings this action alleging unlawful retaliation based on past Equal Employment Opportunity ("EEO") and union activity, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against his employer John E. Potter, Postmaster General, U.S. Postal Service (hereinafter, "defendant," "Potter" or "USPS"). Specifically, plaintiff asserts that he was verbally harassed and physically threatened by his supervisors, that the USPS served a proposed notice of termination upon him, and that the USPS failed to process his compensation claim, for the period of June 7, 2005 to November 10, 2005.

Defendant now moves for summary judgment. For the following reasons, defendant's motion for summary judgment is granted in its entirety. There is absolutely no evidence in this case from which a reasonable jury could find unlawful retaliation. First, there is no evidence of temporal proximity. In fact, well over two years elapsed between the final agency decision in March 2002 in Butler's last EEO proceeding and the first act of alleged retaliation in November 2004. Second, there is no other evidence that could even support an inference of retaliation. Plaintiff cites to no similarly situated individuals who suffered retaliation, or any disparate treatment aimed at plaintiff when compared to workers not engaged in protected activity. Plaintiff cites to no statements that suggest retaliation. In short, plaintiff points to no evidence to support his conclusory

allegation. In fact, in his deposition, plaintiff acknowledged that, other than his belief of retaliation, he had no evidence to support his claim. Thus, after carefully considering the record in this case, the Court finds no evidence to support a *prima facie* case of retaliation. Moreover, even assuming *arguendo* that evidence supporting an inference of retaliation existed, plaintiff has failed to provide any evidence of a materially adverse action upon which a retaliation claim could be based. To the extent that the complaint could be construed as attempting to establish a retaliatory hostile work environment, the allegations of isolated and sporadic unprofessional conduct in the post office asserted by plaintiff are insufficiently pervasive or severe (even if true) to provide a basis for a reasonable factfinder to conclude that a hostile work environment existed. Accordingly, because of the absence of evidence to support plaintiff's conclusory allegation of retaliation, summary judgment in defendant's favor is warranted.

I. BACKGROUND

A. The Facts

The facts described below are taken from the parties' depositions, affidavits, exhibits and the defendant's Local Rule 56.1 ("Def.'s 56.1") statement of facts.[1] Upon

---

[1] Defendant submitted a statement, pursuant to Local Civil Rule 56.1, which asserts material facts which it claims are undisputed in this case. Defendant also complied with Local Civil Rule 56.2 by providing notice to *pro se* plaintiff that he is not entitled to simply rely on allegations in his complaint, but is required to submit evidence, including sworn affidavits, witness statements, and documents to respond to the motion for summary judgment, pursuant to Fed. R. Civ. P.

56(e). This action provided actual notice to plaintiff of the consequences of non-compliance with the requirements of Fed. R. Civ. P. 56. *See, e.g., Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56 . . . . [E]ither the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56 . . . . In the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."). The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-*5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504. Thus, in the instant case, although plaintiff only

consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 54-55 (2d Cir. 2005). Specifically, below is a summary of the evidence that is based on plaintiff's version of the relevant facts and events.

### 1. Incidents of Verbal Abuse and Physical Threat

Plaintiff has been employed by the USPS from December 1980 to present. (Def.'s 56.1 ¶ 3.) Since 1984, plaintiff has worked as a window clerk at the Inwood Post Office, where his duties include serving customers, in person and by telephone, selling stamps and money orders, and handling packages for special delivery. (*Id.* ¶ 4.) The Inwood Post Office is a satellite of the Far Rockaway Post Office, and it has only two or three employees, all of which are window clerks. Neither the Postmaster, George Buonocore, nor any supervisors, work at the Inwood branch. (*Id.* ¶ 5.) Postmaster Buonocore periodically assigned plaintiff to work temporarily at the Far Rockaway Post Office in 2004 and 2005. (*Id.* ¶ 6.) According to plaintiff, he was verbally abused on November 12, 15, 16 and 18, 2004 while working in the Far Rockaway Post Office.

---

submitted three sentences of allegations in his initial complaint and a conclusory three-page opposition to defendant's motion, the Court has carefully reviewed the record (including plaintiff's entire deposition) to determine if plaintiff has any evidence to support his retaliation claim. However, even if the allegations in plaintiff's complaint (as supplemented by his deposition) are true, no reasonable jury could find an inference of retaliation or a materially adverse action for the reasons discussed *infra*.

(*Id.*) Plaintiff also alleges that, while working at the Inwood Branch, he was verbally abused on April 11, 2004 and June 3 and 7, 2005. (*Id.*)

Specifically, on November 12, 2004, Postmaster Buonocore told plaintiff that he looked terrible, as plaintiff walked by the Postmaster's office. (*Id.* ¶ 7.) On November 15, 2004, Scott Klein ("Klein"), one of plaintiff's supervisors, approached plaintiff while he was on the phone and said "Gee, Tom, don't you look comfortable." (*Id.* ¶ 8.) The next incident took place on November 16, 2008, when plaintiff approached Klein to get his paychecks from the period of July 16 and August 13, 2004. Plaintiff heard that Klein had posted plaintiff's paychecks on a bulletin board, but when plaintiff approached Klein that day, he allegedly got the "run-around." (Butler Dep. at 49-50.) After several weeks of inquiring, plaintiff received his paychecks. (*Id.* at 51.) Klein explained that the paychecks were misplaced when Klein reorganized his office and that this had caused the delay. (Def.'s 56.1 ¶ 10.)

That same day – November 16, 2004 – plaintiff alleges that Klein "[s]aid to me did you speak to the union today. I said no, I haven't. He said, well, basically we need to sit down on Thursday with a meeting. We'll go over what is expected of me in so far as my job as a window clerk in the Inwood post office. If I'm a good boy I'll be allowed to go back to my job." (Butler Dep. at 54.) Plaintiff alleges that this took place in front of a mail handler, Grace Cobb, and was "humiliating." (*Id.*) According to plaintiff, Klein then said that he could "do whatever [he] want[s] with [Butler] and work him wherever [he] want[s]," as long as Butler is not scheduled to work weekends and his workday schedule begins at 8:45 a.m. and

3

ends on 5:45 p.m. (Butler Dep. at 55).

Later that day, Grace Cobb told Butler that "Mr. Klein said to her that [Butler's] a special case and in saying that he proceeded to rotate his hand and his index finger near his temple." (Butler Dep. at 55-56.) Klein later told Butler, "Tom, you know I'm only joking." (Butler Dep. at 56-57.) Klein later told Cobb, in Butler's presence, "I would say that you're a bad influence on Tom [Butler], but then again Tom is good at standing around and doing nothing." (Butler Dep. at 58.)

On November 18, 2004, Postmaster Buonocore and Klein "had a discussion about Butler as if he were not there." (Butler Dep. 58-60.) They said that "they were supposed to have some meeting . . . about what is expected of Tom, what he has to do regarding filling out proper 3971 forms, because the people in Inwood miss Tom. They're tired of coming in the post office and leaving right away. They'd much rather wait in line so that they can read the bulletin boards." (Butler Dep. at 59-60.)

"At an unspecified date in March 2005, Postmaster Buoncore [sic] and Klein harassed Butler by keeping him in the Far Rockaway Post Office for two hours before sending him back to the Inwood branch. There was no verbal abuse during this incident." (Def.'s 56.1 ¶ 13.) On April 11, 2005, Val Flame, one of Butler's supervisors, verbally abused Butler for refusing to go to retraining at the Averne Post Office, because Butler considered that post office to be unsafe, as there had been a shooting and a robbery there. Flame called Butler a "scaredy cat" and told him "you've got no balls." (Butler Dep. at 63-64.) Flame told Butler, who reported back to the Inwood branch, instead of to the Averne Post Office, to shut down his drawer. (Butler Dep. at 62.) Klein, who had been called to the Inwood branch, told Butler "I will put you back on the couch in the swing room and pay you if I have to because you like to sit around watching television back there." (Butler Dep. at 63.)

On June 3, 2005, Klein told Butler to shut his window early and then watched Butler count the money and told him that he "could only count it twice." (Butler Dep. at 65.) On June 7, 2005, Klein came to the Inwood branch to count receipts. Klein told Butler that "if things go slow at the window that [Butler] should begin [his] close-out at four p.m." (Butler Dep. at 71.) Klein then asked Butler for an advance of the money in Butler's drawer so that there would be less to count later. (*Id.*) Butler told Klein that he did not have enough money to justify an advance. (Butler Dep. at 72.) Klein responded, "oh, you'll have one even if it's only 15 dollars." (Butler Dep. at 74.) In an effort to comply with Klein's request, Butler closed his window early and began counting the money in his drawer. (Butler Dep. at 75.) Butler had counted the money twice and counted $4,000. He was not satisfied with the count, however, because he was having difficulty concentrating amidst Klein's "constant barrage of attacks." (Butler Dep. at 75.) Klein let Butler count the money a third time, but partway through the count a customer came to his window. Klein then tried to take the money to finish counting it out of Butler's presence. (Butler Dep. at 77.) Butler refused to give Klein the advance until after he finished the transaction. Butler told Klein that he needed to watch Klein count the money, to which Klein responded "absolutely not. You gave me a printed slip showing the four thousand dollar amount. That means you verified the amount and I'm going with the money." (Butler Dep. at 78.) Butler refused

to allow Klein to take the money.

Klein then made a telephone call to Butler's union representative, Larry Cahill, and, speaking loudly twenty feet from Butler, Klein told Cahill, "Larry, you better get down here in a hurry. I have a problem with Mr. Butler. My neck is beet red and hairs are standing on my head . . . . If you don't get down here fast, I'm going to kick him out the door and it won't be verbal this time." (Butler Dep. at 79-80.) Klein then returned to Butler's window and "berated him" by asking "are you nervous, Tom" because Butler was having trouble "putting the figures into the computer." (Butler Dep. at 81-82.) When Larry Cahill arrived, Klein began to tell him what happened "in his opinion." (Butler Dep. at 83-84.) Klein was making "sarcastic remarks about [Butler] as he [went] on." (Butler Dep. at 84.) Butler responded, "I don't like the tone of your voice. You're talking down to me again and I don't like it." (Butler Dep. at 84). When Cahill asked "what is the problem," Klein said: "I have no problem with Tom's work as a window clerk. . . . he knows his job and the customers like [him]." (Butler Dep. at 85.) The incident ended when Butler's drawer was counted and was short by a dollar and change. (Butler Dep. at 86.)

2. Notice of Termination

Due to the stress of the events of June 7, 2005, Butler did not return to work until November 2005. On June 8, 2005, Butler called a supervisor and said that he would not be back to work "until further notice." (Def.'s 56.1 ¶ 23.) "No supervisor approved Butler's absence, and he did not submit a form 3971, a document by which leave is sought and approved." (*Id.* ¶ 24.) "By notice dated October 17, 2005 (exhibit D), the USPS notified Butler that his employment would be terminated on November 21, 2005 because: (1) he had been continuously absent without approved leave since June 8, 2005; (2) he had failed to obey orders to provide acceptable medical documentation justifying his absence, as directed in notifications mailed to his residence on June 13, and July 1, 2005; and to report for a pre-disciplinary interview, as directed in a notification mailed to his residence on July 25, 2005." (*Id.* ¶ 25.) The notice was expunged as a result of a settlement agreement dated February 26, 2006. (*Id.* ¶ 26; Defendant's Motion to Dismiss, Ex. E.) "Butler never lost any time or pay, nor were there any adverse job consequences to him as a result of receiving the notice of termination." (Def.'s 56.1 ¶ 26; Butler Dep. at 133-34.)

In December 2007, Butler's union gave Klein a claim for workers' compensation, seeking benefits for the period June to November 2005. (Butler Dep. 105.) "Neither the USPS Flushing office, where it was directed for transmittal to the Department of Labor, nor the Department of Labor have received the claim (Butler Dep. 105-107). Butler has 'put the matter in the hands of the union' (Butler Dep. 107). Butler does not know where his claim went, nor does he know what efforts, if any, are being made to resolve locating his claim (Butler Dep. 108-110)." (*Id.* ¶ 27.)

3. Complaint of Retaliation

Butler contacted an EEO counselor on July 20, 2005, claiming that Postmaster Buonocore and Klein had retaliated against him in the form of verbal abuse beginning in late 2004 and the physical threat by Klein of June 7, 2005 because of his prior EEO and union activity. (Def.'s 56.1 ¶ 28.) On September 8,

5

2005, Butler filed an EEO complaint of discrimination, alleging retaliation because he was "a previous EEO witness and complainant [and because of his] status as a union official." (Defendant's Motion for Summary Judgment, Ex. G, at 1.) The retaliation consisted of Klein's physical threat on June 7, 2005 and verbal harassment by Klein and Postmaster Buonocore "as far back as Oct.-Nov. 2004." (Def.'s 56.1 ¶ 29.)

Prior to Butler's contact with an EEO counselor in July of 2005, Butler last contacted an EEO counselor on January 28, 2000 and last filed an EEO complaint on April 10, 2000. (*Id.* ¶ 30.) "In that proceeding, he claimed that due to retaliation because of past EEO activity he was charged as absent without leave in December 1999, was threatened with the elimination of his job and was issued a letter of warning in April 2000. Butler's claims were dismissed by a final agency decision dated March 8, 2002 (exhibit J). Butler did not take any subsequent action on his EEO complaint." (*Id.* ¶ 31.) Butler also attributed the alleged retaliation to his activity as an EEO witness. At his deposition, Butler "stated that he had last been a witness in 1982 or 1983, about 23 years before he filed the instant EEO complaint." (*Id.* ¶ 31 (citing Butler Dep. at 111-12).) Plaintiff does not know whether Klein or Postmaster Buonocore were aware of that activity at the time of the incidents described above. (Butler Dep. at 112.) Neither Klein, nor Postmaster Buonocore ever said anything to Butler that indicated to Butler that they were retaliating against him for past EEO activity. (Def.'s 56.1 ¶ 32.) At Butler's deposition, the following exchange occurred:

> Q: I want to know what makes you believe that Mr. Buonocore retaliated against you because of any EEO activity?
>
> A: Because I had been a previous complainant in EEO cases so he is fully aware of that. Apparently that doesn't sit too well when you file an EEO case. Consequently I become an enemy.
>
> Q: Anything more than what you told me leads you to believe he retaliated against you because of EEO activity?
>
> A: Just the fact that as a previous complainant he doesn't exactly appreciate me too much.
>
> Q: Because you're a previous complainant?
>
> A: That's correct.
>
> Q: Anything other than what you've told me leads you to believe that he retaliated against you?
>
> A: I can't think of anything. No, sir.
>
> Q: What about Mr. Klein leads you to believe he retaliated against you because of prior EEO activities?
>
> A: Same thing as Mr. Buonocore. Along the same lines.

(Butler Dep. at 97-99.) At his deposition, Butler said the following about retaliation based on his union activity:

> Q: You also say that you believe they retaliated against you because of union activities.

A: Yes.

Q: What union activities?

A: I was a union official?

Q: Anything else?

A: Anything else?

Q: I'm trying to understand what you meant when you said that they were aware of your union activities and retaliated against you because of that?

A: My capacity as a union official was what I was alluding to.

Q: No specific actions, just by virtue of being a union official?

A: My allegiance to the union, yes.

Q: When you mention union activities, you mean that they knew that you were a union official and retaliated against you because of that?

A: Yes.

(Butler Dep. at 93.)

### B. Procedural History

Plaintiff submitted a letter to an EEO counselor at the Equal Employment Opportunity Commission ("EEOC") on July 20, 2005, and filed a complaint of discrimination with the EEOC on September 8, 2005, alleging that the defendant retaliated against him because of his prior EEO and union activity. On May 8, 2006, the EEOC issued a "Right to Sue" letter.

Plaintiff filed a complaint in this action on August 3, 2006, alleging employment discrimination under Title VII on the basis of retaliation. On February 13, 2007, defendant filed an answer to plaintiff's complaint. On April 14, 2008, defendant filed a motion for summary judgment. Plaintiff filed his opposition on October 6, 2008. Defendant filed a reply on June 30, 2008. On March 24, 2008, although defendant submitted substantial portions of plaintiff's deposition, the Court directed that defendant provide the entire transcript to the Court, which the Court received and reviewed. The Court has considered all of the parties' submissions.

## II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Though a *pro se* litigant's pleadings are afforded wide latitude, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, as noted above, to overcome a motion for summary judgment, the non-moving party "must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted); *see also Morris v. Ales Group USA, Inc.*, No. 04-CV-8239

8

(PAC), 2007 U.S. Dist. LEXIS 47674, at *10 (S.D.N.Y. June 28, 2007) ("[T]o survive summary judgment, plaintiff's facts 'must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

III. DISCUSSION

Plaintiff brought this action against defendant for allegedly retaliating against him because of past EEO and union activity in violation of Title VII. Under Title VII, it is unlawful for employers to discriminate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). For the reasons set forth below, plaintiff's retaliation claim cannot survive summary judgment.

A. Timeliness Issue

As a threshold matter, defendant argues that, because plaintiff did not contact an EEO officer to complain of the alleged retaliation until July 20, 2005, any claims of discrimination which occurred prior to June 5, 2005, 45 days before he filed that complaint with the EEO counselor, are time barred. As set forth below, the Court agrees.

Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures. *See generally* 42 U.S.C. § 2000e-16; *Briones v. Runyon*, 101 F.3d 287, 289-90 (2d Cir. 1996). Under EEOC regulations, an aggrieved agency employee who believes he has been discriminated against must consult with a counselor at the agency's EEO office within 45 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105(a)(1) (2007); *Fitzgerald v. Henderson*, 251 F.3d 345, 358-59 (2d Cir. 2001); *Pauling v. Sec'y of the Dep't of Interior*, 160 F.3d 133, 133-34 (2d Cir. 1998). The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Downey v. Runyon*, 160 F.3d 139, 145-46 (2d Cir. 1998).

However, the 45-day rule is treated as a "limitations periods subject to equitable tolling." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984). Specifically, in *Boos v. Runyon*, 201 F.3d 178 (2d. Cir. 2000), the Second Circuit Court of Appeals held that the 45-day requirement is subject to equitable tolling. *Boos*, 201 F.3d at 184; *accord Briones*, 101 F.3d at 290. The 45-day requirement may be tolled:

> [w]hen the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the

9

agency or the Commission.

29 C.F.R. § 1614.105(a)(2).

"Tolling of the time limit is granted when 'rare and exceptional circumstances' prevented a plaintiff from filing on time." *Williams v. Potter,* No. 06 Civ. 8258 (LAP), 2007 WL 2375818, at *5 (S.D.N.Y. Aug. 14, 2007) (quoting *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000)). When determining whether equitable tolling is applicable, a district court must consider "whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos*, 201 F.3d at 184-85; *see also Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507 (LMM), 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

Plaintiff does not dispute the facts set forth by defendant related to the timing issue in terms of his failure to comply with the 45-day rule with respect to incidents prior to June 5, 2005. Moreover, plaintiff has failed to offer any basis for equitable estoppel and the record indicates no circumstances which prevented plaintiff from asserting his rights.

However, in an abundance of caution, the Court has considered all of plaintiff's allegations – both before and after June 5, 2005 – in assessing whether his retaliation claim should survive summary judgment. In particular, it appears that plaintiff is attempting to argue that all of his claims are timely because, they are part of a retaliatory hostile work environment and, thus, constitute a "continuing violation." (Plaintiff's Opposition, at 2 (alleging that the "unprofessional remarks made by Mr. Klein and Mr. Buonocore" prior to June 2005 "are the groundwork (pattern of behavior) leading up to the physical threat by Mr. Klein" that took place on June 7, 2005 and support his claim of "a retaliatory hostile work environment").)[2] Thus, the alleged incidents

---

[2] In order to invoke the "continuing violation" exception, plaintiff must demonstrate that separate incidents were a part of a larger unlawful employment practice and, therefore, any one of those incidents occurring within the mandatory 45-day period necessarily implicates those that preceded it. *See AMTRAK v. Morgan*, 536 U.S. 101, 115-21 (2002); *see also Quinn v. Green Tree Credit Corp*, 159 F.3d 759, 766 (2d Cir. 1998) ("a continuing violation may be found 'where there is proof of specific ongoing discriminatory polices [sic] or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice'") (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)), *abrogated in part on other grounds by Morgan*, 536 U.S. 101. Accordingly, in the case of plaintiff's hostile work environment claim, "the statute of limitations requires that only one . . . harassing act demonstrating the challenged work environment occur within [the

that defendant argues are time-barred – namely, the alleged verbal harassment by Klein and Buonocore occurring prior to June 5, 2005 – all relate to plaintiff's claim (as liberally construed) that he suffered from a retaliatory hostile work environment both before and after that date. Therefore, for purposes of considering plaintiff's retaliatory hostile work environment claim, the pre-June 5, 2005 incidents will be fully considered by the Court.

## B. Lack of Evidence to Support Inference of Retaliation

---

limitations period]; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117); *see also Linder v. City of New York*, 263 F. Supp. 2d 585, 594 (E.D.N.Y. 2003) (denying motion to dismiss hostile work environment claim where plaintiff was sexually assaulted by a co-worker prior to the statutory time period, but was subjected to retaliatory acts and was forced to work in close proximity to her assailant within the limitations period). However, as the Supreme Court observed in *Morgan*, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113; *see Petrosino*, 385 F.3d at 220 ("The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period."); *Butts*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *22-*23 (S.D.N.Y. Jan. 28, 2009); *see also Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) ("[T]he exception does not apply to discrete, completed employment actions such as transfers, failures to promote, demotions, or inadequate wages.") (citations omitted).

The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

As an initial matter, defendant argues that plaintiff's claims based on retaliation because of plaintiff's union activity are not actionable under Title VII because any such union activity is not protected under Title VII. The Court agrees. Title VII does not provide redress for employees alleging discrimination

based on their participation in union activities. *Mitchell v. Superior Court*, 04 Civ. 3301, 2007 U.S. Dist. LEXIS 41464, at *48-*49 (N.D. Cal. June 7, 2007) ("[plaintiff's] claims of retaliation based on union activity are not within the purview of Title VII, whose scope is specifically delineated in the statute and is the subject of an extensive jurisprudence"); *see also Perez v. Int'l Brotherhood of Teamsters, AFL-CIO*, 00 Civ. 1983 (LAP) (JCF), 2004 U.S. Dist. LEXIS 16109, at *47 (S.D.N.Y. Aug. 16, 2004) ("[F]iling an internal union challenge based on violations of national and local union constitutions is not a 'protected activity' within the meaning of the Title VII statute. Therefore, as a matter of law, such a complaint cannot form the basis of a Title VII retaliation claim."); *Brown v. City of Cleveland*, 05 Civ. 2974, 2007 U.S. Dist. LEXIS 20826, at *25 (N.D. Ohio Mar. 22, 2007) (filing of claim alleging racial and gender discrimination constituted "protected activity" under Title VII, while claim alleging discrimination based on union activity did not); *Carrion v. Local 32B-32J Service Employees International Union, AFL-CIO*, No. 03 Civ. 1896 (THK), 2005 U.S. Dist. LEXIS 4417, at *53-*54 (S.D.N.Y. Mar. 21, 2005) (plaintiff's participation in union activity not a "protected activity"); *Drake v. Delta Air Lines*, 94 Civ. 5944, 1997 U.S. Dist. LEXIS 22753, at *5-*6 (E.D.N.Y. July 10, 1997) (stating that "[plaintiff] cannot bring a claim for relief under Title VII since that legislation does not prohibit employment discrimination on the basis of anti-union sentiment"); *Lee v. U.S. Postal Serv.*, 882 F. Supp. 589, 597 (E.D. Tex. 1995) ("Title VII does not protect union activities; such activities are covered by other provisions of federal law."); *see also Cobb v. Potter*, No. 1:04-CV-128, 2006 U.S. Dist. LEXIS 63118 (W.D.N.C. Aug. 22, 2006); *Stotler v. Potter*, 8:04-CV-409, 2006 U.S. Dist. LEXIS 19801 (D. Neb. Apr. 10, 2006); *Ramirez v. Gonzales*, No. 2:03-CV-372, 2006 U.S. Dist. LEXIS 9473 (S.D. Tex. Feb. 23, 2006); *Onofrei v. Gen. Sec. Servs. Corp.*, No.04-CV-5560, 2005 U.S. Dist. LEXIS 32716 (N.D. Ill. Dec. 5, 2005). Therefore, the Court will focus on plaintiff's claim of retaliation because of his prior EEO activity, which defendant does not dispute is protected activity.

Defendant argues that plaintiff cannot make out a *prima facie* case of retaliation here because he cannot show a causal connection between the protected activity and the alleged retaliation. In support of this position, defendant contends that plaintiff cannot establish a causal connection between the protected activity and the alleged retaliation because there is no evidence of temporal proximity, disparate treatment, or retaliatory animus. Specifically, defendant argues that: (1) "the interval of approximately two and a half years (measured from the final agency decision of March 8, 2002 in Butler's last EEO proceeding to the first act of retaliation alleged in this case, in November 2004,[)] is simply too long under any standard to permit a finding of causality," (Defendant's Memorandum of Law, at 8), (2) "Butler has not identified any similarly situated employees who engaged in similar conduct and allegedly suffered retaliation," (*id.*), and (3) "[a]t his deposition, Butler testified that neither Klein nor Postmaster Buonocore had ever said anything to him that made him believe that they were retaliating against him for past EEO activity." (*Id.* at 9.) The Court agrees with defendant's position. Here, as set forth below, plaintiff has produced no evidence to support a causal connection between his EEO activity in 2002 and any adverse actions in 2004 or beyond that date.

In Title VII retaliation claims, a plaintiff

may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Where there is no direct evidence of such animus, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)); *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

It is undisputed that plaintiff cannot show direct evidence of retaliatory animus.[3] Thus, the Court will examine whether there is any indirect evidence which, taken together, could support a reasonable inference of retaliation. The answer, in the instant case, is no. Plaintiff has failed to identify any indirect evidence of retaliation. Although plaintiff alleges certain mean and/or unprofessional comments by supervisors, none could support an inference of retaliation. Similarly, plaintiff does not offer any evidence that he was treated differently than similarly situated co-workers who did not engage in protected activity. Nor does plaintiff allege that he is aware of any incidents of retaliation against other employees.[4]

The Court recognizes that, where there is no direct evidence of retaliatory animus or a showing of disparate treatment or evidence, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. The temporal proximity between the final agency decision of plaintiff's prior EEO complaint in March 2002 and the first allegedly discriminatory incident in November of 2004, however, is much too attenuated to establish a causal connection between the protected activity and the adverse action. *See, e.g., Clark County School Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' [Alleged retaliatory a]ction taken (as here) 20 months later suggests, by itself, no causality at all.") (citations omitted); *see also Ruhling v. Tribune Co.*, No. 04 Civ. 2430 (ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (finding that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *Cunningham v. Consol. Edison Inc*, No. 03-CV-3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (same); *Hussein v. Hotel Employees & Rest. Union, Local 6*, No. 98 Civ. 9017 (SAS), 2002

---

[3] Nothing in any of the incidents plaintiff describes reasonably can be seen to provide any such direct evidence. Neither comments about plaintiff's appearance or job performance, nor a notice of termination after an extended absence from work, constitute direct evidence of retaliation.

[4] In his opposition papers, plaintiff makes a one-sentence, vague claim that supervisor Klein retaliated against another post office clerk, but provides absolutely no evidence to support that conclusory allegation.

13

WL 10441 (S.D.N.Y. Jan. 3, 2002) (finding that the passage of more than two months defeats any retaliatory nexus); *Ponticelli v. Zurich Amer. Ins. Group*, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (finding that a "two-and-a-half month[]" interval "is hardly the close proximity of time . . . for allowing a plaintiff to establish the 'causal connection' element") (citation omitted); *see also Hollander v. Amer. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (three and a half months insufficient); *Yarde*, 360 F. Supp. 2d at 562 ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y 2003) ("[A] period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related"); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").

The absence of any evidence from which a reasonable jury could conclude that there was retaliation in this case is reflected in plaintiff's deposition and his opposition to the defendant's motion. In his deposition, plaintiff was unable to articulate any proof to support a conclusion that he was the victim of retaliation, other than his personal belief. Moreover, in his opposition papers, plaintiff cites to no evidence, but simply alleges he can show retaliation because his supervisor Klein "was unceremoniously defeated i[n] his attempt at becoming President of said local A.P.W.U. Mr. Klein used the information gained during his time as a union representative to attempt to deny me my rights as a USPS window clerk/sales associate . . . ." (Plaintiff's Opposition, at 1-2.) These issues regarding his supervisor's union activity do not provide any basis for a retaliation claim under Title VII. Thus, it is clear from the Court's independent review of plaintiff's deposition and his three-page opposition that he has no evidence to permit a reasonable jury to infer a retaliatory motive.

In sum, plaintiff offers nothing more than conclusory allegations in his complaint and in his deposition, with no basis in fact, that he was retaliated against and, thus, there is no evidence from which to create a genuine issue of material fact for trial. *See Winkfield v. City of New York*, No. 97-CV-2183 (HB), 1999 U.S. Dist. LEXIS 19193, at *14 (S.D.N.Y. Dec. 14, 1999) ("[P]laintiff has failed to come forward with any evidence whatsoever and relies on conclusory allegations and his own belief alone. That's just not enough.") (citing *Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996) (summary judgment properly granted on her retaliation claim where plaintiff failed to put forth any evidence other than her own personal belief that defendant's articulated nondiscriminatory reason was pretextual)); *see also Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2003) (holding that a first amendment retaliation claim cannot be based on "conclusory assertions of retaliatory motive"; rather, "[plaintiff] must produce 'some tangible proof to demonstrate that [his] version of what occurred was not imaginary'") (quoting *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999)); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (holding that a party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"); *Carey*, 923 F.2d at 21 (holding that "bald assertion[s], completely unsupported by

evidence" cannot defeat summary judgment).

Accordingly, even viewing the evidence most favorably to plaintiff, he cannot make out a *prima facie* case of retaliatory discrimination because there is no evidence to support a causal connection between the protected activity and the alleged retaliation, and summary judgment in defendant's favor is warranted.[5]

## C. Lack of Adverse Action or Hostile Work Environment

Even assuming *arguendo* there was sufficient evidence of causation to survive summary judgment, the Court concludes in the alternative that plaintiff has provided insufficient evidence for a reasonable jury to conclude that there was a hostile work environment or that any materially adverse action was taken against him.

The Supreme Court recently stated in *Burlington Northern & Santa Fe Ry. v. White* that an "adverse employment action" is one which "a reasonable employee would have found [to be] materially adverse" and which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 60 (2006).

As a threshold matter, the proposed notice of termination, dated October 17, 2005, is not a materially adverse action because it is undisputed that it was expunged and there was no adverse consequence to Butler, such as the loss of payment or time.[6] *See Cheshire v. Paulson*, No. 04-CV-3884 (FB) (LB), 2007 U.S. Dist. LEXIS 42633, at *15 (E.D.N.Y. June 12, 2007) ("Nor did the IRS's proposed suspension and termination constitute adverse employment actions, since both were ultimately rescinded."); *Varela v. Potter*, No. 3:02-CV-334-S, 2006 U.S. Dist. LEXIS 14428, at *28 (W.D. Ky. Mar. 29, 2006) ("[Plaintiff] has not satisfied [the adverse employment action] element because her

---

[5] Even if the Court liberally construes plaintiff's Title VII complaint to also be asserting a First Amendment retaliation claim for union activity under 42 U.S.C. § 1983, any such claim based upon plaintiff's union activity also fails to survive summary judgment. To prevail on such a claim, plaintiff must show a causal connection between the First Amendment union activity and the adverse action. *See Raniola v. Bratton*, 243 F.3d 610, 626 (2d Cir. 2001); *Woods v. Enlarged City School Dist.*, 473 F. Supp. 2d 498, 530 (S.D.N.Y. 2007). As with his Title VII retaliation claim, plaintiff has no evidence from which a reasonable jury could find a causal connection between his union activity and any adverse actions. In particular, plaintiff's only allegation in this regard is a conclusory statement in his EEO complaint that he was retaliated against because of his "status as a union official." (Def.'s 56.1 ¶ 29 and Ex. G.) Moreover, when asked at his deposition to elaborate on his union activities or any evidence to support his belief that he was retaliated against because of such activities, plaintiff was unable to point to any specific union activity in which he engaged and simply re-stated his conclusory assertion that he was the victim of retaliation based upon his allegiance to the union. (Butler Dep. at 93.) Given the complete absence of any proof to support an inference of retaliation based upon his purported union activity, any such retaliation claim under Section 1983 (or any other federal statute) cannot survive summary judgment.

[6] In any event, the defendant has offered a legitimate, non-discriminatory reason for its action – namely, that plaintiff was continuously absent from work from June 8, 2005 to October 17, 2005, without approved leave or the submission of appropriate medical documentation. Plaintiff has offered nothing to counter this uncontroverted evidence.

proposed removal never materialized."); *Stamos v. Potter*, No. 03-6107-HO, 2004 U.S. Dist. LEXIS 19378, at *14 (D. Or. Sept. 21, 2004) ("The proposed termination was never acted upon and thus was not an adverse employment action."); *Hardy v. Potter*, 191 F. Supp. 2d 873, 883 (E.D. Mich. 2002) (same).

Moreover, although the Court has liberally construed plaintiff's papers to allege a hostile work environment claim, any such claim cannot survive summary judgment. In connection with that issue, defendants contend that plaintiff cannot make out a retaliatory hostile work environment claim because plaintiff has pointed to no facts which show retaliatory animus and because "Butler alleges discrete incidents of petty slights and incivility which fall far short of the standard of a workplace which is hostile because 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (Defendant's Memorandum of Law, at 13 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)) (emphasis added by defendant).) As set forth below, the Court agrees with the defendant.

In order to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct. *See, e.g., Rasco v. BT Radianz*, No. 05 Civ. 7147 (BSJ), 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."); *Faison v. Leonard*, No. 08 Civ. 2192 (PKC), 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (same); *McWhite v. New York City Housing Authority*, No. CV 0991 (NG) (LB), 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008); *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("An allegedly retaliatory act must rise to some level of substantiality before it can be actionable. The hostile work environment doctrine, as developed in the anti-discrimination jurisprudence of Title VII, embodies that prerequisite.") (citation omitted); *Rigau v. Pfizer Caribbean Corp.*, 525 F. Supp. 2d 272, 287 (D.P.R. 2007) (same).

Thus, a plaintiff must demonstrate that his workplace is "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998)); *see Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004); *see also Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003); *Richardson v. N.Y. Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

The Second Circuit has held that there is no "magic" threshold number of harassing incidents that are required, as a matter of law,

to demonstrate a hostile work environment. *See Richardson*, 180 F.3d at 439. Rather, a hostile work environment is determined by "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Howley*, 217 F.3d at 154 (citing *Harris*, 510 U.S. at 23); *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir. 1989)).

Here, plaintiff has made allegations that he was subject to several incidents during the period from November 2004 to June 2005, in which his supervisors were rude or verbally abusive to him. Specifically, plaintiff alleges that his supervisors made disparaging comments on his appearance and job performance, once withheld his paycheck for several weeks, threatened violence against plaintiff on one occasion, and after plaintiff failed to come to work for several months, issued a notice of termination to plaintiff that was later voided. Such incidents were not so severe and pervasive that a reasonable jury could find his work environment to be sufficiently hostile or abusive to constitute a retaliatory hostile work environment. *See, e.g., Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace.") (citations and quotations omitted); *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment."); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (noting that "[i]solated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment") (citation omitted); *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (finding the alleged conduct non-actionable when the incidents were "too few, too separate in time, and too mild . . . to create an abusive working environment"); *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 27 (1st Cir. 2002) ("Title VII does not guarantee[] a working environment free from stress. Something more egregious than rudeness and mockery is needed before we can permit a finding of a retaliatory hostile work environment based on intermittent contact over a three-day period.") (quotations and citations omitted); *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant calling plaintiff a "bitch" and making sexual remarks over the course of her five and one-half years of employment insufficient to support a claim of discriminatory harassment); *Pagan v. N.Y.S. Division of Parole*, No. 98 Civ. 5840 (FM), 2003 U.S. Dist. LEXIS 20752, 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (finding that two racially derogatory remarks by supervisor directly to plaintiff did "not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII") (citations omitted); *Upshur v. Dam*, No. 00 Civ. 2061 (DC), 2003 U.S. Dist. LEXIS 628, 2003 WL 135819, at *7-*8 (S.D.N.Y. Jan. 17, 2003) (finding one week of "patronizing and racist" comments by supervisor insufficient); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (finding that supervisor's use of racially derogatory slur to refer to defendant on four or more occasions does not alter conditions of employment

significantly enough to implicate Title VII).[7]

In sum, even construing the evidence most favorably to plaintiff (including assuming all plaintiff's allegations to be true), plaintiff has failed to provide evidence that would support a reasonable jury finding either that (1) a hostile work environment existed or (2) that a causal connection existed between any purported hostile work environment (or any other alleged adverse action) and his protected activity. Accordingly, summary judgment on any claim of a retaliatory hostile work environment is warranted.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 26, 2009
Central Islip, New York

\* \* \*

Plaintiff is representing himself *pro se*: Thomas J. Butler, 107-56 117th Street, Richmond Hill, New York, 11419. The attorney for the defendant is Vincent Lipari, Esq., United States Attorneys Office, Eastern District of New York, 610 Federal Plaza, 5th Floor, Central Islip, New York 11722.

---

[7] As one court has noted, there is a question as to whether, after the Supreme Court's decision in *Burlington Northern*, the standard for showing a retaliatory hostile work environment is less than the standard for a traditional hostile work environment claim because for a retaliation claim a plaintiff need only show a "materially adverse action" rather than an "adverse employment action." *See Khan v. HIP Centralized Lab. Servs., Inc.*, No. 03-CV-2411 (DGT), 2007 WL 1011325, at \*9 (E.D.N.Y. Mar. 30, 2007) ("It is . . . unclear whether the Supreme Court's decision in *Burlington Northern*, 126 S.Ct. 2405, altered the standard for retaliatory hostile work environment claims.") In other words, if such a difference exists, a plaintiff could theoretically be subject to materially adverse actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 U.S. at 77 (quotations and citations omitted), but not "sufficiently severe or pervasive," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (U.S. 1986), to alter the conditions of plaintiff's employment. However, even assuming *arguendo* that this lower standard existed, plaintiff's claim here would still not survive summary judgment because his isolated and sporadic claims of rudeness and incivility towards him are insufficient to support a reasonable jury concluding that such actions, even if true, would dissuade a reasonable worker from making or supporting a charge of discrimination.